## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**OSCAR MADRID**                                           **CIVIL ACTION**

**VERSUS**                                                **NO.:   15-965**

**BURL CAIN, WARDEN**                                     **SECTION:   "E"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).   For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### *Procedural History*

Petitioner, Oscar Madrid, is a state prisoner incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.   On August 5, 2010, Madrid was charged with second degree murder and cruelty to a juvenile in violation of Louisiana Revised Statutes 14:30.1 and 14:93.[1]   On February 28, 2012, following a two-day jury trial, he was found guilty as

---

[1] State Rec., Vol. 1 of 4, Twenty-Fourth Judicial District Court, Parish of Jefferson, Grand Jury Bill of Indictment.

charged.[2]    He was sentenced on March 7, 2012 to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence and ten years at hard labor, to run consecutively.[3]

On direct appeal, Madrid asserted three assignments of error:    (1) the evidence did not support his conviction for second degree murder; (2) the trial court erred in failing to declare a mistrial upon introduction of other crimes evidence; and (3) the trial court erred by refusing to suppress his statement.    The Louisiana Fifth Circuit Court of Appeal affirmed the conviction and denied his request for a rehearing.[4]    He did not seek relief in the Louisiana Supreme Court.

On or about April 2, 2013, Madrid filed an application for post–conviction relief with the state district court.[5]    In that application, he raised three grounds for relief:    (1) he was

---

[2]  State Rec., Vol. 1 of 4, Minute Entry, 2/28/12; *see also* State Rec., Vol. 2 of 4, Trial Transcript (Feb. 28, 2012), p. 210.

[3]  State Rec., Vol. 1 of 4, Minute Entry, 3/7/12, *see also* State Rec., Vol. 2 of 4, Transcript of Sentencing Hearing, (March 7, 2012), pp. 7-8.

[4]  *State v. Madrid*, 12-KA-410 (La. App. 5th Cir. 12/11/12), 104 So.3d 777, *reh'g denied* (La. App. 5th Cir. 1/18/13).    The record reflects that Madrid filed a motion with the court of appeal requesting an extension of time to file an application for rehearing.    The motion was dated December 20, 2012 and stamped as filed on January 2, 2013.    The Louisiana Fifth Circuit refused the request for rehearing by order dated January 18, 2013.    *See* State Rec., Vol. 2 of 4, Motion for Extension and Notice denying Rehearing.

[5]  State Rec., Vol. 3 of 4, Uniform Application for Post-Conviction Relief.    Federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the

denied the right to effective assistance of conflict-free counsel at trial; (2) he was denied due process and equal protection when the trial court failed to ensure that conflict-free counsel was eliminated or waived; and (3) he was denied effective assistance of counsel on appeal when counsel failed to properly notify him of the appellate court's ruling.   On August 5, 2013, the district court denied relief.[6]   On September 19, 2013, his related writ application filed with the Louisiana Fifth Circuit Court of Appeal was denied.[7]   The Louisiana Supreme Court denied relief on May 30, 2014.[8]

On or about March 24, 2015, Madrid filed his federal application for *habeas corpus* relief.[9]  In his petition, Madrid asserts the following grounds for relief:    (1) the trial court erred in failing to suppress his statement; (2) the trial court erred in failing to declare a mistrial upon admission of other crimes evidence; (3) the evidence was insufficient to

---

moment the prisoner "placed it in the prison mail system."   *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).   Because Madrid signed and dated his application on April 2, 2013, this is the earliest date he could have delivered it to prison officials for filing.

[6] State Rec., Vol. 4 of 4, District Court Order signed August 5, 2013, denying post-conviction relief.

[7] State Rec., Vol. 4 of 4, *State v. Madrid*, 13-KH-741 (La. App. 5th Cir. Sept. 19, 2013) (unpublished writ ruling).

[8] *State ex rel. Madrid v. State*, 2013-KH-2356 (La. 5/30/14), 140 So.3d 735; State Rec., Vol. 4 of 4.

[9] Rec. Doc. 3, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus executed March 24, 2015.

support his conviction for second degree murder; (4) he was denied effective assistance of conflict-free trial counsel; (5) the trial court failed to eliminate the conflict or ensure that he knowingly waived such conflict; and (6) he was denied effective assistance of appellate counsel for failure to properly notify him of the appellate court's ruling.   The State filed a response, conceding that the federal application is timely, but arguing that claims (1) through (3) are not exhausted because Madrid failed to present those claims to the Louisiana Supreme Court.   The State argues that all of the claims also fail on the merits.[10]

While a federal court may not grant *habeas* relief on any claim that the state prisoner has not first exhausted in the state courts, *see* 28 U.S.C. § 2254(b)(1), it may deny relief on such a claim if it lacks merit.   *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Miller v. Dretke*, 431 F.3d 241, 245 (5th Cir.2005); *Cox v. Stephens*, 602 F. Appx. 141, 143-44 (5th Cir. 2015).   Accordingly, the Court will exercise its discretion to consider the unexhausted claims, which are clearly non-meritorious for the reasons set forth herein.[11]

---

[10]  Rec. Doc. 16.

[11]  Madrid raised claims (1) through (3) in the intermediate court on direct appeal, but thereafter failed to pursue the claims by a writ of certiorari in the Louisiana Supreme Court. Although he did include these claims in his post-conviction relief application filed with the Louisiana Supreme Court, his lower court writ applications did not contain these three claims.   Madrid also appears to have no remaining avenue of relief available in the state

### *Facts*

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts as

follows:

> The testimony at trial revealed that Baleria Lopez, victim, was killed by defendant on the morning of May 2, 2012. For years leading up to the killing, defendant and the victim had a troubled romantic relationship. By the time of the killing, defendant, the victim, and the victim's father, Mr. Lopez, lived together at 2208 Hero Drive in Gretna, Louisiana. The relationship between defendant and the victim produced two children.
>
> Witnesses testified that defendant physically abused the victim on multiple occasions. Ms. Hilda Lopez Martinez, the victim's sister, testified that she had seen bruises on the victim around fifty times. Ms. Martinez also testified that she witnessed defendant, in anger, throw a glass at the feet of the victim. She alleged this caused the victim to sustain a cut which required stitches. Further, Ms. Rodriguez, a friend of the victim, testified that during the time that the victim was pregnant, she saw defendant choking the victim. The court heard testimony that at the time of the killing, defendant planned to move out of the house because his romantic relationship with the victim was ending.
>
> On May 2, 2012, at around 9:00am, the victim entered her home and saw defendant sleeping on the couch in the living room. Her entrance woke defendant who then confronted her about where she had been all night. The evidence reflects that defendant believed that the victim had been out the previous night with another man. An argument ensued between the two while

courts under Louisiana law.   *See Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991); *Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010) (finding no abuse of discretion in denying a stay so petitioner could return to the state courts and present his unexhausted claims because "when a petitioner is procedurally barred from raising [his] claims in state court, his unexhausted claims are plainly meritless") (quoting *Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir.2005)). Regardless, the State has not raised procedural default with respect to the unexhausted claims and this Court is not required to consider the issue.   *See Trest v. Cain*, 522 U.S. 87, 89 (1997).

they were seated on the couch. Defendant went to the kitchen to grab a knife before returning to the couch. Defendant and the victim continued to argue. This argument escalated and ended when defendant stabbed the victim in the neck one or more times.

The victim screamed out for her father, stood up from the sofa, and collapsed to the floor. When Mr. Lopez entered the living room he saw his daughter lying on the floor. Mr. Lopez asked defendant what he had done; to this, defendant responded, "I stabbed her."

Evidently regretting his actions, defendant started to cut himself with a knife. When he realized that the victim was still breathing however, he dropped the knife and attempted to resuscitate her, pleading with Mr. Lopez to assist. When defendant realized that his efforts were futile, he asked Mr. Lopez to call the police. Before the police arrived, defendant got another knife and again began trying to cut himself. The victim's father however wrestled this knife away from defendant.

At approximately 9:50a.m., Officer Damond Bartlett responded to the house at 2208 Hero Drive. Arriving on the scene, he noticed a Hispanic male on a cell phone standing in the doorway of the residence. He then entered the home and saw two Hispanic males: the one who had been in the doorway had moved to behind the sofa, the other was pushing on the stomach of a woman sprawled out on the floor. Officer Bartlett later determined that the man in the doorway was Mr. Lopez and that the other individual was the defendant.

Officer Bartlett testified that defendant's compressions on the victim's stomach appeared to be an attempt at CPR. As soon as defendant noticed Officer Bartlett, defendant begged "Help me." Officer Bartlett knelt down to assess the victim's injuries and when he determined that she lacked a pulse, he requested medical assistance and a supervisor. Meanwhile, Officer Bartlett observed a young child in the house covered in blood. This child, subsequently determined to be the two-year-old son of the victim and defendant, was turned over to Detective Louis Alvarez, who observed three or four small lacerations on the child's right arm and a cut on his head. A sweep of the house turned up two more young children, whose ages were approximately two and three. These children were passed off to other officers who continued to arrive on the scene.

6

Defendant and Mr. Lopez were detained in handcuffs, escorted out of the house, secured in separate patrol vehicles, and brought to the police station. At the station, defendant began making unsolicited inculpatory statements. Detective Canas, a Spanish language interpreter, advised defendant of his *Miranda* rights. Defendant then stated that he did not wish to speak. So officers did not question him after that point. Later that same day, with the help of Detective Canas acting as a translator, defendant was advised of his rights, executed a rights of arrestee form, waived his rights, and gave a statement.

At trial, defendant testified that he did not want to talk to the police and that he didn't understand his rights as they were read to him. He stated that he did not tell the police the truth, instead telling them what they wanted to hear. He also testified that he did not intend to kill the victim.

On March 31, 2011, at a pre-trial *Prieur* hearing, the State sought to introduce evidence of defendant's prior acts of violence against the victim. At that hearing, Ms. Martinez testified that she had seen bruises on the victim multiple times and that she believed that those bruises were from defendant's violence against the victim. At the conclusion of this hearing, the trial court ruled that these and other statements would be allowed at trial to prove defendant's motive and method of operation. At trial, Ms. Martinez testified that she had seen bruises on victim around 50 times. After Ms. Martinez testified to this, and after twenty-two additional questions were asked, counsel for defendant objected to Ms. Martinez's testimony regarding seeing bruises 50 times. Counsel made a motion for a mistrial which the court denied.

On February 28, 2012, the jury found defendant guilty of both cruelty to a juvenile in violation of La. R.S. 14:93 and second degree murder in violation of La. R.S. 14:30.1.[12]

### *Standards of Review on the Merits*

Title 28 U.S.C. § 2254(d) (1) and (2), as amended by The Antiterrorism and Effective

---

[12] *State v. Madrid*, 104 So.3d at 779.

Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.    A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").    With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."    *Bell v. Cone*, 535 U.S. 685, 694 (2002).    A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United

8

States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [such] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

9

With respect to claims that have not been adjudicated on the merits by the state courts, a federal court does not conduct review pursuant to 28 U.S.C. § 2254(d).[13]    Instead, the Court applies a *de novo* standard of review.    *See Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir.2014); *In Re: Paredes*, 587 F. Appx. 805, 814 (5th Cir. 2014).

### Analysis

**1. *Denial of the Motion to Suppress Statement***

Madrid claims that the trial court violated his constitutional rights when it denied his motion to suppress the statement he made to detectives following his arrest.    He contends that his statement to police following verbal and written *Miranda* warnings and his waiver of those rights should have been suppressed because he had earlier invoked his right to remain silent.    He also argues that his waiver under *Miranda* was not knowing or voluntary given his "emotional state, the language barrier…and his difficulty in understanding his rights."[14]

It appears from the record of the suppression hearing that Madrid was arrested and brought to the police station in the late morning hours of May 2, 2012.    Detective David

---

[13]  For Madrid's unexhausted claims that were raised and denied on the merits in the intermediate state court of appeal by reasoned decision, the Court will nonetheless apply *de novo* review because a claim that fails under that standard of review would necessarily fail under AEDPA's deferential standard of review.    *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

[14]  Rec. Doc. 3, pp. 29-30.

10

Canas, who acted as a Spanish translator in the investigation, went to the station shortly thereafter and spoke to Madrid in the holding cell.    He testified that at the time Madrid was upset and crying, making unsolicited inculpatory statements about the incident and actually attempting to physically harm himself.[15]    Detective Canas calmed him down and orally advised him of his *Miranda* rights in Spanish.    Madrid testified at the suppression hearing that he was offered several items such as food, cigarettes and medical care, but he told Detective Canas, "I don't want anything. I just don't want to talk. I want to be alone."[16]    It is undisputed that Detective Canas complied and left him alone.    According to Madrid, about six hours later, Detective Canas returned with Detective Russ to question him.[17]    Detective Russ testified that because he was responsible for the crime scene he was unable to return until the afternoon to question Madrid.    The record reflects that with Detective Canas serving as translator, Madrid was again orally advised of his rights in English and Spanish, executed a written waiver of rights form and gave a statement to police.[18]    Detective Russ and Detective Canas both testified that Madrid indicated he understood his rights and that

---

[15]  State Rec., Second Supplemental Vol. 1, Transcript of Suppression Hearing, pp. 26-27.

[16]  *Id.* at 35.

[17]  The record shows that the interrogation began at 4:07 p.m and ended at 4:20.    *Id.* at 20.    *See also* State Rec., Vol. 4 of 4, State's Exhibit 36 (Madrid's transcribed statement).

[18]  State Rec., Second Supplemental Vol. 1 at p. 27.

his wavier of those rights was entirely voluntary.[19]    Each testified that Madrid was not promised anything or coerced or threatened into giving the statement.

The Fifth Amendment, which applies to the states by virtue of the Fourteenth Amendment,[20]  provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."    U.S. Const. amend. V.    In *Miranda v. Arizona*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. 436, 444 (1966). Prior to questioning an individual during a custodial interrogation, law enforcement officers must inform the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.    *Id*. at 479.

If the right to counsel or the right to remain silent is invoked at any point during questioning, further interrogation must cease. *Berghuis v. Thompkins*, 560 U.S. 370 (2010). In order to trigger the obligation to cease questioning, however, a suspect's invocation of the *Miranda* right to silence must be unambiguous and unequivocal. *Id*. at 381 (citing *Davis v.*

---

[19]  *Id*. at 16 (Det. Russ), 28-29 (Det. Canas).

[20]  *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

*United States*, 512 U.S. 452, 459 (1994) (concluding if an accused makes a statement concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, then police are not required to end the interrogation)).    Even a clear and unambiguous invocation of the right to remain silent does not prohibit further questioning if law enforcement officials "scrupulously honor" the defendant's assertion of the right. *Michigan v. Mosley*, 423 U.S. 96, 102–04 (1975) (holding that police must scrupulously honor a suspect's invocation of the right to silence).    In that instance, future questioning is not foreclosed and a suspect may be approached again later to seek a waiver of rights.    *See id.* at 102-103 (*Miranda* cannot "sensibly be read to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent.").    Indeed, the *Mosley* Court found no violation considering that the initial interrogation stopped immediately upon the suspect's invocation of his right to remain silent, that a significant amount of time passed prior to the resumption of questioning, that the suspect was again read his rights prior to further questioning, and that upon resuming questioning, the suspect was questioned by a different officer about an unrelated crime.    *Id.* at 105-106.

Madrid argues that detectives had no right to question him further once he invoked his right to remain silent.    However, even assuming he properly invoked his right to remain silent, this did not foreclose the officers' ability to conduct further questioning.    Rather the

13

relevant question, as the appellate court observed on direct appeal, was whether the police scrupulously honored Madrid's right to remain silent.

The United States Fifth Circuit has set out the factors to be considered, while expressly observing, however, that no single factor is dispositive:

> (1) whether the suspect was advised prior to initial interrogation that he was under no obligation to answer question [sic]; (2) whether the suspect was advised of his right to remain silent prior to the reinterrogation; (3) the length of time between the two interrogations; (4) whether the second interrogation was restricted to a crime that had not been the subject of earlier interrogation; and (5) whether the suspect's first invocation of rights was honored.

*Gutierrez v. Stephens*, 590 F. Appx. 371, 376 (5th Cir. 2014) (citing *United States v. Alvarado –Saldivar*, 62 F.3d 697, 699 (5th Cir.1995) (citing *Mosley*, 423 U.S. at 104–05, 96 S.Ct. 321).

There is no question based on the instant record that the detectives indeed honored Madrid's request and immediately ceased all questioning.    Madrid confirmed they did not attempt to question him again for at least six hours.    Unlike earlier, Madrid agreed at this time to talk to the detectives.    The record plainly establishes that Detective Canas advised Madrid of his *Miranda* rights when he first met with him at the jail, immediately ceased speaking with Madrid when he invoked his right to remain silent, and only resumed questioning after a significant period of time.    The mere fact he was questioned again about the same crime is not alone decisive, nor an overriding consideration under the circumstances where it is clear police did not ignore his invocation of rights or otherwise

14

attempt to undermine his resolve to remain silent.   *Id.*; *Kelly v. Lynaugh*, 862 F.2d 1126, 1131 (5th Cir. 1988).    Furthermore, Madrid was again advised of his rights under *Miranda* and executed a written waiver of those rights before he made the statement to police.    His contention that officers failed to honor his right to remain silent is factually and legally unsupported.

Madrid next maintains his waiver was not knowing or intelligent because he was unable to understand Detective Canas when he advised him of his *Miranda* rights, and simply did as instructed without fully understanding the consequences.    The record shows that Madrid has a limited understanding of the English language and therefore was unable to communicate with police in English.    He communicated through Detective Canas, who is fluent in Spanish and translated for Madrid.    However, Madrid claims that a language barrier also existed between him and Detective Canas because of their different Spanish dialects, *i.e.*, Honduran versus Columbian.    Madrid also suggests that his own limited education and highly emotional condition contributed to the problem.    He claims that during his time in custody, he was handcuffed and provided no food or water and believed he had no other choice but to submit to questioning.

An individual may waive his right against self-incrimination if done so "voluntarily, knowingly and intelligently."    *Miranda*, 384 U.S. at 444.    Two relevant inquiries determine whether an accused has voluntarily and knowingly waived his Fifth Amendment

privilege against self-incrimination.     *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir.2002). First, a waiver of the right must be voluntary and not the product of intimidation, coercion or deception.     *Moran*, 475 U.S. at 421.     Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived. *Id*. In making these inquiries, the court must consider the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

The record in this case demonstrates that none of the factors mentioned above impeded Madrid's ability to make a knowing, intelligent and voluntary waiver of his rights. Detective Canas regularly acted as a translator for the department.     Detective Canas sufficiently advised Madrid of his *Miranda* rights in Spanish on two separate occasions. This undisputed fact was recognized by the court on direct appeal:

> Here, defendant was twice advised of his rights in his native language of Spanish by Detective Canas. Defendant was first advised of his rights soon after he had arrived at the police station and began making unsolicited inculpatory statements. Defendant was again advised of his rights by Detective Canas before a later questioning by the lead investigator, Detective Russ. This second time defendant was advised, was with a rights of arrestee form, which Detective Canas verbally translated into Spanish. Defendant indicated to the officers that he understood his rights both orally and by signing the form.[21]

---

[21]   *State v. Madrid*, 104 So.3d at 784.

16

Madrid expressed to the detectives that he understood his rights[22] and he signed the written waiver form.[23]   At no time did he give any indication that he did not understand those rights. In fact, at the end of the interview he clarified again that he indeed understood his rights and that he gave the statement voluntarily.[24]

Despite his assertions otherwise, the record confirms that Madrid understood Detective Canas's Spanish dialect.   Madrid was asked specifically if he understood the translator's Spanish and he stated, "sometimes I don't understand, but when we talk about it [I] understand."[25]   He admitted he was fully able to understand Detective Canas's questions about whether he wanted food, a doctor or cigarettes, to which he was able to respond that he wanted nothing except to be left alone.   Detective Canas testified that he had communicated with individuals from Honduras on other occasions and that he and Madrid were able to speak and understand one another in Spanish.[26]   The transcript reflects Madrid was able to offer appropriate responses to every question posed and explain his version of events through Detective Canas.   There is simply nothing to support Madrid's

---

[22]  State Rec., Second Supp. Vol. 1, Tr. at 16 (Det. Russ); Tr. at 28 (Det. Canas).

[23]  State Rec., Vol. 4 of 4, Trial Exhibit 34 (executed waiver of rights form).

[24]  *Id*. at p. 12, Exhibit 36 (Madrid's transcribed statement).

[25]  *Id*. at p. 11.

[26]  State Rec., Second Supp. Vol. 1, Tr. at pp. 40-43.

self-serving allegation that he was unable to understand Detective Canas's Spanish. Instead, the record demonstrates that Detective Canas reasonably and effectively conveyed Madrid's *Miranda* rights to him by translating and explaining those rights in his native language of Spanish and Madrid indicated he understood those rights as translated.   *See United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990) ("Although language barriers may inhibit a suspect's ability to knowingly and intelligently waive his *Miranda* rights, when a defendant is advised of his rights in his native tongue and claims to understand such rights, a valid waiver may be effectuated.").

Madrid's contention that a limited education or his emotional state prevented him from understanding his rights is likewise not only unsupported, but is contradicted by the record. There is nothing in the record to indicate his level of intellectual functioning. Madrid has not provided any medical records or other evidence (*i.e.*, evaluations, reports, test results, etc.), to show that he actually suffers from intellectual deficiencies or the extent to which those deficiencies allegedly impaired his cognitive capacity.    Moreover, his responses to the questions as translated by Detective Canas do not reflect any limitation. With respect to his emotional state, Detective Russ and Detective Canas testified that, while he seemed upset before the interview began, Madrid's demeanor remained calm and perfectly coherent when he was advised of his rights and throughout questioning.[27]    In fact,

---

[27] *Id.* at p. 22 (Det. Russ); p. 26 (Det. Canas).

the transcript reveals Madrid had no difficulty providing fully coherent responses during questioning.

Finally, there is no evidence to support Madrid's assertion that his will was overborne and he felt compelled to submit to questioning because of the lack of food, water or physical constraints.   The transcript itself reflects that the interview was brief and no coercive tactics were used. Furthermore, Madrid admitted that he was previously offered items to make him comfortable, such as food and medical care, but he declined them.    The record shows that detectives sought to make him comfortable before the interview.    Additionally, Madrid's statements indicate he freely agreed to talk to officers.    He was asked specifically during the interview if he agreed to give the statement of his own free will and Madrid responded that he had.[28]    Madrid also testified at the suppression hearing that he gave the statement because he wanted to tell the truth.[29]    Thus, despite the fact that he may have experienced some emotional, and perhaps some physical, distress, there is nothing to show that police used any sort of inducements or physical punishment to obtain his confession. *See Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir.1998).

In sum, Madrid's verbal and express written confirmation that he understood his *Miranda* rights as translated to him in Spanish, along with his willingness to be interviewed,

---

[28]  State Rec., Vol. 4 of 4, Exhibit 36 (transcribed statement), p 12.

[29]  State Rec., Second Supp. Vol. 1, p. 37.

establish that he made a knowing, intelligent, and voluntary waiver of his *Miranda* rights. Madrid has failed to demonstrate that his statement was obtained in violation of his constitutional rights.    He is not entitled to relief on this claim.

## 2. *Denial of Motion for Mistrial*

Madrid contends the trial court erred in failing to grant his motion for a mistrial when a witness impermissibly testified at trial to evidence of other crimes that went beyond the scope of the evidence brought forth during a *Prieur* hearing.[30]    The State provided notice of its intent to introduce evidence of the volatile nature of the relationship and prior incidents of domestic abuse between Madrid and the victim, and the trial court granted the State's motion to allow that evidence under Louisiana Code of Evidence article 404(B).

At trial, the victim's sister, Hilda Lopez Martinez, testified that she had seen bruises on her sister "many times."    When asked about how many times she observed them, she stated, "Like 50 times or more.    *I don't know.*"[31]    No objection was lodged contemporaneously.[32]    Later, during an objection to another line of testimony from the

---

[30]  State Rec., Vol. 1 of 4, Hearing transcript (March 31, 2011), p. 21.    *See State v. Prieur*, 277 So.2d 126 (La.1973).

[31]  State Rec., Vol. 1 of 4, Trial transcript (Feb. 27, 2012), p. 59.

[32]  On direct appeal, the Louisiana Fifth Circuit found that, pursuant to Louisiana Code of Criminal Procedure article 841, the alleged error was not subject to review because defense counsel failed to object contemporaneously to the testimony during trial.    The State's response raises this issue; however, given Madrid's failure to fully exhaust this claim

witness, defense counsel also mentioned an objection to her earlier reference to seeing bruising on 50 occasions and moved for a mistrial.    The motion was addressed outside of the hearing of the jury.[33]    The trial court denied the motion for mistrial, finding that the testimony did not exceed the scope of its evidentiary ruling.[34]

To the extent Madrid argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal *habeas* review. *See Swarthout v.Cooke*, 562 U.S. 216, 219 (2011) (finding federal *habeas* review does not lie for errors of state law). Federal *habeas* review on such matters is proper only to determine whether a state trial court's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.    *Estelle v. McGuire*, 502 U.S. 62 (1991); *Goodrum v. Quarterman*, 547 F.3d 249, 261 (5th Cir. 2008).    In this case, Madrid alleges that the trial court misapplied Louisiana law and went beyond the scope of a pretrial evidentiary ruling in allowing the witness to testify to a specific number of times she saw bruising on the victim.    However, as a matter of state evidentiary law, that issue is not proper for review before this federal court.

The only issue properly before this Court with respect to the admission of this

---

as stated previously, the Court will exercise its discretion to consider and deny the claim on the merits.    28 U.S.C. § 2254(b)(2).

[33]  *Id*. at 65-67.

[34]  *Id*. at 92-93.

testimony is whether it rendered Madrid's trial fundamentally unfair.    Madrid argues that

the witness's "exaggeration" portrayed him as a bad person and denied him a fair trial.

However, given the sheer extent of other admissible, non-objectionable testimony at trial

within the scope of the 404(B) motion regarding numerous incidents of abuse and violence

that occurred between Madrid and the victim, the limited and qualified reference by Ms.

Martinez as to how many times she may have recalled seeing bruises on her sister did not

render Madrid's trial "fundamentally unfair."    This claim does not warrant federal *habeas*

relief.

### 3. Sufficiency of the Evidence

Madrid claims that the evidence was insufficient to support his conviction for second-

degree murder.    He suggests that the evidence was sufficient to prove only manslaughter.

Although Madrid admits to stabbing and killing the victim, he argues this was "a crime of

rage" and "he snapped when threatened with the breakup of his family and proof of [the

victim's] unfaithfulness, lost his ability to think rationally, and his pent up rage erupted when

he was told that his family and children were unimportant."[35]    The applicable legal

standard, however, requires that this Court consider whether the evidence was sufficient to

prove second degree murder, which was the verdict in his case.

In considering and rejecting this claim on direct review, the Louisiana Fifth Circuit set

_____

[35] Rec. Doc. 3, pp. 42-43.

forth the following pertinent legal and factual considerations:

In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00–0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); *State v. Mickel*, 09–953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, *writ denied*, 10–1357 (La.1/7/11), 52 So.3d 885. Under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. *State v. Jones*, 08–20, p. 6 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. *Id.*, 08–20 at 7, 985 So.2d at 240.

Defendant was charged with and convicted of second degree murder in violation of La. R.S. 14:30.1. Second degree murder is defined as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. *State v. Seals*, 09–1089, pp. 13–14 (La. App. 5 Cir. 12/29/11), 83 So.3d 285, 306 (citing La. R.S. 14:10(1)). The determination of specific intent is a question of fact. *Id.*, 09–1089 at 14, 83 So.3d at 306. Specific intent may be inferred from the circumstances and from the defendant's actions, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. *Id.* (citation omitted). Further, specific intent to kill can be implied by the intentional use of a deadly weapon such as a knife or a gun. *State v. Cochran*, 09–85 (La.App. 5 Cir. 6/23/09), 19 So.3d 497, 508, *writ denied*, 09–1742 (La. 3/26/10), 29 So.3d 1249 (citation omitted).

For instance, in *Cochran*, this Court found that the evidence was sufficient to support the jury's finding that the defendant had the specific intent to kill or inflict great bodily harm when the victim sustained a 3 ½-inch deep slash on

23

the left side of his neck, severing his carotid artery and jugular vein. *Cochran*, 09–85 at 18–19, 19 So.3d at 508.

Here, defendant admitted, that he stabbed the victim. As a result of the stabbing, the victim sustained one or more sharp-force injuries to her neck. The most severe of these was 4 ½ inches deep, penetrating through the muscles on the left side of her neck, through her carotid artery, her thyroid gland, through the muscles on the right side of her neck, and piercing the plural cavity surrounding her right lung.

In view of the severity of the victim's injuries and the manner in which they were inflicted, this Court finds, as the *Cochran* court did, that any rational trier of fact would have found that defendant acted at least with the specific intent to inflict great bodily harm, if not to kill. Thus, this Court finds that the evidence was sufficient to support the jury's finding that defendant was guilty of second degree murder.

[D]efendant argues that manslaughter, not second degree murder, was supported by the evidence. Manslaughter is a homicide that would be a first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that the average person's blood would have cooled, at the time the offense was committed. La. R.S. 14:31(A)(1). "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors that may reduce the grade of the offense. *State v. Bauman*, 08–1169, p. 11 (La. App. 5 Cir. 5/12/09), 15 So.3d 177, 185, *writ denied*, 09–1533 (La.4/23/10), 34 So.3d 300.

In order to be entitled to the lesser verdict of manslaughter, the defendant is required to prove the mitigatory factors by a preponderance of the evidence. *Bauman*, 08–1169 at 11, 15 So.3d at 185. Provocation and time for cooling are questions for the jury to determine under the standard of the average or ordinary person, one with ordinary self-control. *Id.* (citation omitted). The question for this Court on review is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that the mitigatory factors were not established by a preponderance of the

24

evidence. *Id.* (citations omitted).

Here, evidence showed that defendant knew well in advance of the homicide that the victim had begun a relationship with another man. Defendant himself admitted that before the day of the murder, he had seen hickeys on the victim's neck which he did not give her. Defendant further admitted that he had seen the victim in the park with another man. Ms. Rodriguez testified that, on the night before the murder, defendant believed that the victim was with another man. She testified further that she told defendant that he and the victim could not be together, and that defendant just needed to "leave it at that." After this conversation, Ms. Rodriguez then dropped defendant off at his house. There, several hours later, at around 3:00am, Mr. Lopez arrived home to find defendant cooking. Mr. Lopez testified that defendant told him that he, defendant, was leaving the house. Mr. Lopez further testified that after this, he and defendant shared a drink and that he told defendant that leaving was a good idea because defendant and the victim had been fighting. In light of this evidence, this Court finds that a reasonable trier of fact could have found that defendant did not sufficiently prove that this act occurred in a sudden heat of passion.[36]

The applicable standard for reviewing claims of insufficient evidence was set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which held "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id.* at 319; *see also Williams v. Cain*, 408 F. Appx. 817, 821 (5th Cir.2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses,

---

[36] *State v. Madrid*, 104 So.3d at 781-83.

because those determinations fall within the exclusive province of the jury. *United States v. Young*, 107 F. Appx. 442, 443 (5th Cir.2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005). A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (quoting *Herrera v. Collins*, 506 U .S. 390, 402 (1993)).

At trial, the jury heard evidence from witnesses, including Madrid, that he had known for some time and intended to confront the victim about her relationship with another man. He and the victim had argued before and he knew the victim was unhappy and wanted to discontinue their relationship.    The victim's father testified that he spoke to Madrid that night and Madrid indicated he would be leaving tomorrow.    The victim's father counseled him that it was a good decision and he could leave on good terms and maybe find someone

else.    Madrid admitted that after confronting the victim, he did not like what she told him and retrieved a knife from the kitchen in order to scare her.    He sat beside her and when she continued saying things he did not like, he stabbed her multiple times in the neck, leaving her with severe and fatal wounds, one of which measured four and a half inches deep. Although he denied having the specific intent to kill her, the evidence was sufficient to show otherwise.

The evidence presented at trial was sufficient for a reasonable jury to conclude that Madrid had specific intent to kill his girlfriend because he actively desired the consequences of his actions.    Under Louisiana law, the fact that he armed himself with a knife which he planned to use with forceful purpose was sufficient to establish specific intent.    There was no evidence to support the suggestion that he acted with sudden passion or heat of blood sufficient to support a manslaughter conviction, especially where he admittedly had known for some time about their troubled relationship and armed himself with a knife during their discussion that evening because she was not remorseful about the breakup of their family. The evidence and testimony were more than sufficient for a reasonable jury to conclude that Madrid acted with specific intent to kill or commit great bodily harm when he went into the kitchen and armed himself with a knife, returned to the living room to continue the discussion, and then stabbed her multiple times.    The jury obviously chose to discredit his testimony that he did not intend to cut her with the knife.

27

Madrid had the burden of proving that he killed the victim in sudden passion or heat of blood. The jury, however, rejected his contention and rendered a verdict of second degree murder.     The evidence in this case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find that the State satisfied the elements necessary to prove second degree murder.     Madrid is not entitled to relief on this claim.

## 4. *Ineffective Assistance of Trial Counsel*

Madrid claims his trial attorney was ineffective for failing to "insure [he] was represented by conflict free counsel in violation of [his constitutional rights]."     Madrid's claim involves "assisting appointed counsel," Raul Guerra, who disclosed to the trial court in advance of trial that he had formerly represented one of the state's witnesses, Reina Pavia Rodriguez, on an unrelated criminal matter in parish court.     The record makes clear, however, that Guerra served only to assist appointed defense counsel, Calvin Fleming, in the interpretation of the Spanish language, and not as co-counsel in the case.[37]     Madrid acknowledged on the record that he had been so informed and had no objection to Guerra's continued involvement in his defense.

Madrid essentially claims he was denied effective assistance of counsel when Guerra continued to represent him despite a conflict of interest that adversely affected counsel's

---

[37]   State Rec., Supplemental Vol. 1, Pretrial excerpt. *See also* State Rec., Vol. 1 of 4, Minute Entries (Trial), R. pp. 18, 22 (identifying Guerra as "assisting counsel").

ability to perform.    He argues that he was prejudiced by the conflict because he was prevented from effectively questioning witnesses through Guerra.    He claims he was told on occasion that the questions he sought to have counsel ask of witnesses were inappropriate.    Madrid mentions an instance where he claims he asked his attorney to question "one witness" about her reason for testifying and counsel told him the question "would not set well with the judge or jury."[38]   He does not identify any witness in particular and there is no record of such an exchange during trial.

Madrid's ineffective assistance claim was considered and rejected on the merits by the state courts on post-conviction review.    In upholding the state district court's ruling and declaring neither *Strickland* prong satisfied, the court of appeal reasoned:    "Nowhere in his application for post-conviction relief, nor in his writ application, does relator demonstrate that he received ineffective assistance of counsel or that he was adversely affected by "assisting" appointed counsel's continued involvement in his case."[39]   The Louisiana Supreme Court denied relief without additional reasons.

To prevail on an ineffective assistance claim under *Strickland*, Madrid must prove that:    (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.    *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80

---

[38]  Rec. Doc. 3, p. 33.

[39]  State Rec., Vol. 4 of 4, 13-KH-741 (5th Cir. Sep. 19, 2013).

L.Ed.2d 674 (1984).    A petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir.2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1992).    To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F .3d 438, 450 (5th Cir.2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88.    To satisfy the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir.2010). The Court need not resolve both prongs under *Strickland*, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir.1995).

    "Under the Sixth Amendment, if a petitioner has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest. " *Morin v. Thaler*, 374 F. Appx. 545, 551 (5th Cir.2010).    However, to obtain post-conviction relief for injury sustained by a counsel's joint representation, a defendant who raised no objection at trial must "demonstrate that an actual conflict of interest adversely affected his

lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).[40]   Indeed when a petitioner alleges a Sixth Amendment violation on the basis of counsel's purported conflict of interest and establishes that a conflict of interest adversely affected counsel's performance, prejudice is presumed. *Id.*   In this context, the United States Fifth Circuit Court of Appeals observed the crux of the inquiry as follows:

> [W]hether "trial counsel had a conflict of interest that hampered the representation" in the sense that "counsel actively represented conflicting interests." "[A] conflict will exist only when counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." Such a conflict does not arise, however, when the alleged conflict is merely "hypothetical," "speculative[,] or potential." Relevant factors may include (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter; (3) how close are the multiple representations in time; and (4) whether the prior representation has terminated. As we have noted, Sullivan's 'actual conflict' and 'adverse effect' elements are "rather vague," so IAC claims predicated on such conflicts are "tightly bound to the particular facts."

*Morin v. Thaler*, 374 F. Appx. at 551.

Because Madrid's ineffective assistance of counsel claim was rejected by the state courts on the merits, and because such claims present mixed questions of law and fact, this

---

[40]   Although Madrid also cites *Holloway v. Arkansas*, 435 U.S. 475 (1978), which involved a situation where counsel was forced to represent co-defendants over his timely objection to the joint representation, that case is clearly inapplicable here.   *See also Mickens v. Taylor*, 535 U.S. 162, 168 (2002); *Gillan v. Goodwin*, 12-2425, 2014 WL 6633472, at *4-5 (E.D. La. Sept. 10, 2014), *report and recommendation adopted*, 2014 WL 6637763 (Nov. 21, 2014).

Court must defer to the state court decision rejecting the claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact doubly deferential.    *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

In the instant case, Madrid's attorneys made a pretrial disclosure to the court regarding a remote potential conflict of interest involving Guerra in an abundance of caution, even though the nature of Guerra's involvement at trial was extremely limited and he was not serving as co-counsel for Madrid.    The record shows that Madrid was made aware of Guerra's former representation of state witness Rodriguez in a prior unrelated criminal matter and had no objection to Guerra's continued involvement.    The record supports that Guerra's only role was to assist with translation.    This was not a case where counsel was actively representing multiple parties with conflicting interests so as to suggest the division of loyalties.    *See Strickland*, 466 U.S. at 692.    Nor was Guerra compelled to compromise any duty of loyalty to Madrid when he did not even cross-examine Ms. Rodriguez.[41]    *Cf.*

---

[41]  State Rec., Vol. 1 of 4, Trial transcript, pp. 26-28.

*Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir. 1974); *United States v. Martinez*, 630 F.2d 361 (5th Cir. 1980).    In fact, Guerra took no witnesses and presented no argument on Madrid's behalf during the course of the two-day trial.    Madrid had separate and independent appointed trial counsel, Fleming, to represent his interests.    There has been no suggestion much less any showing that Fleming, who served as trial counsel, suffered from any divided loyalties or actual conflict of interest.

Additionally, Madrid's vague allegations with regard to Guerra's advice to him during trial, even if true, may be viewed simply as sound advocacy. "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."    *Burt v. Titlow*, 134 S.Ct. 10, 17 (quoting *Strickland*, 466 U.S. at 690).    Madrid's general and unsupported assertion certainly does not prove that an actual conflict existed that adversely affected counsel's performance.    *See Davis v. Thaler*, 373 F. Appx. 446, 449 (5th Cir. 2010) ("A speculative or potential conflict is not enough; rather, a conflict exists when counsel is compelled to compromise duties of loyalty to his client.").

Madrid has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.    He is not entitled to relief on this claim.

33

**5. *Trial Court's Failure to Eliminate Conflict of Interest***

Madrid next claims that he was denied due process and a fair trial when the trial court failed to eliminate the actual conflict of interest with Guerra or to ensure that Madrid validly waived the conflict.    The State argues this claim is procedurally defaulted.    The record shows that the state district court determined this claim was procedurally barred under Louisiana Code of Criminal Procedure article 930.4(C), because although the claim could have been raised on appeal, Madrid failed to do so.    The court of appeal agreed with the district court's denial on that basis.    The Louisiana Supreme Court subsequently denied relief without further explanation.    *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (holding that when the last state court judgment in a particular series of judgments does not indicate whether it is based on a procedural default or on the merits of a claim, it must be presumed that the court relied upon the same grounds as the last reasoned state court opinion).

Madrid does not argue that Louisiana Code of Criminal Procedure article 930.4(C) should not be considered an adequate or independent state bar to prevent federal review of this claim.    Furthermore, it is well-settled that article 930.4 (C) qualifies as an independent and adequate rule to support a procedural bar in federal court. *See e.g.*, *Parks v. Cain*, 2014 WL 505329, at *8 (E.D. La. Feb. 6, 2014) (applying procedural bar in connection with a claim that the petitioner was not allowed to testify at trial); *Simmons v. Cain*, 2008 WL 2185422 (E.D. La. May 20, 2008) (same); *Jones v. Cain*, 2010 WL 3312592, 5–6 (E.D. La. July 29, 2010)

(applying procedural bar in connection with a claim of ineffective assistance of counsel); *Smith v. Cain*, 2013 WL 6669816, at *4 (E.D. La. Dec. 18, 2013) (same).

Where the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir.1999). In this case, Madrid has shown neither.

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir.1992). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.   *Murray v. Carrier*, 477 U.S. at 486. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir.1996).

Madrid has not offered any cause for the default which would excuse the procedural

35

bar imposed by the Louisiana courts.    A review of the record in this case does not support a finding that any factor external to the defense prevented petitioner from raising his claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.    In addition, neither *pro se* status nor ignorance of the law is sufficient cause to excuse a procedural default.    *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

Finally, Madrid may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (*citing Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).    To establish a fundamental miscarriage of justice, a petitioner must provide this Court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray v. Carrier*, 477 U.S. at 496; *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). To satisfy the factual innocence standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D.Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

The record in this case fails to support any claim that Madrid is actual innocent of the charges against him.    In fact, Madrid admitted stabbing the victim in this case.    Thus, he has not established that the failure to entertain his defaulted claims will result in a fundamental miscarriage of justice.    *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).    For these reasons, Madrid has failed to overcome the procedural bar and this claim should be dismissed as procedurally defaulted.

Nevertheless, even if the Court were to consider this claim on the merits, it should be rejected.    It is clear that allowing Madrid to proceed to trial with assisting counsel Guerra for translation purposes only did not deny Madrid a fair trial.    Before trial began, the trial court heard from the defense that Guerra would serve as "assisting" appointed counsel for translation purposes and not in any trial counsel capacity.    Madrid had separate and independent appointed trial counsel, Fleming, to conduct the trial and cross-examine the witness at issue.    Regardless of whether any purported waiver was valid or even necessary, as previously discussed, there simply was no evidence presented to suggest that any actual conflict existed that adversely affected the representation.    Thus, this claim is meritless and does not warrant *habeas* relief.

## 6. Ineffective Assistance of Appellate Counsel

In his final claim, Madrid contends his appellate counsel provided ineffective assistance because she sent him a letter written in English, rather than in his native Spanish,

informing him that the Louisiana Fifth Circuit had denied his appeal.    As a result, he claims

counsel abandoned him and denied him the ability to file a timely writ application with the

Louisiana Supreme Court.    The state district court denied the claim.    The court of appeal

agreed that the claim had no merit because the record showed Madrid was able to and did

apply for a rehearing with the court of appeal in response to the letter within the 30-day

delay for filing a writ application to the Louisiana Supreme Court. [42]    The Louisiana

Supreme Court denied relief without additional stated reasons.

Persons convicted of a crime are entitled to effective assistance of counsel in their

first appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821

(1985). To prove that appellate counsel was ineffective, a petitioner must satisfy the

two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 697 (1984) (*i.e.*, that

counsel's performance was deficient and that the deficient performance prejudiced the

defense). *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.2004).    A showing of prejudice in

this context requires that a petitioner establish a reasonable probability that he would have

succeeded on appeal but for his counsel's deficient representation.    *Briseno v. Cockrell*, 274

F.3d 204, 207 (5th Cir.2001); *United States v. Phillips*, 210 F.3d 345, 350 (5th Cir.2000).

Because the state courts adjudicated the claim on the merits and the issue of ineffective

assistance of counsel is a mixed question of law and fact, the question before this Court is

---

[42]  State Rec., Vol. 4 of 4, No. 13-KH-741.

38

whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.    28 U.S.C. 2254(d)(1); *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir.2012).

Here, Madrid does not argue that counsel was ineffective in presenting his direct appeal.    Nor does he dispute the timeliness of her notification regarding the outcome of that appeal.    In fact, Madrid's letter from counsel was written within two days of the appellate court's decision.[43]    Rather, Madrid's sole argument is counsel failed to notify him of the outcome *in Spanish.*    The state court's denial of this ineffective assistance claim was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court.

The constitutionally secured right to counsel ends when the decision by the appellate court is entered and does not encompass or require notification by counsel, either timely or otherwise.    *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir.2002) (reversing the district court's finding that Moore's appellate counsel was ineffective in failing to notify him timely of the outcome of his direct appeal because the constitutionally secured right to counsel ends when the decision by the appellate court is entered); *see also Ross v. Moffitt*, 417 U.S. 600, 619 (1974) (the state was not constitutionally required to provide a criminal defendant with counsel on discretionary appeal to the state supreme court).    Therefore, the failure to

---

[43]  Rec. Doc. 3, p. 137 (Exhibit "K," correspondence dated December 14, 2012).

notify Madrid of the appellate court's ruling in Spanish cannot constitute ineffective assistance by appellate counsel.

In any event, the record also shows that Madrid received timely notice from counsel that his appeal was denied and that he was aware of his filing deadlines.     As the state courts determined, the letter written in English sufficed for him to take prompt action, within a matter of days, and request a rehearing from the court of appeal within the 30-day window during which he had to apply to the Louisiana Supreme Court.[44]   The inferior quality or availability of inmate legal assistance he maintains he received at this point in time is not relevant to his appellate counsel's effectiveness.    Nor has Madrid established a reasonable probability that, but for counsel's failure to notify him in Spanish, the result of the appeal proceedings would have been different (*i.e.*, a different outcome on the merits of his claims).

For the foregoing reasons, Madrid has failed to demonstrate that the state court's decision rejecting his claim of ineffective assistance with respect to appellate counsel was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. He is not entitled to *habeas* relief on this claim.

---

[44]  State Rec., Vol. 4 of 4, No. 12-KA-410, Motion for Rehearing dated December 20, 2012.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Madrid's application for federal *habeas corpus* relief be

**DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error,

from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc*).[45]

New Orleans, Louisiana, this ___6th___ day of _____June_____,
2016.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[45]   *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.